STATE OF CONNECTICUT *v.* NADINE ALLEN

FILE No. CR 2-12994

STATE OF CONNECTICUT *v.* VIVIEN JONES

FILE No. CR 2-12999

STATE OF CONNECTICUT *v.* BARBARA KING

FILE No. CR 2-13000

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued April 20—decided May 15, 1964

 

*John F. Clancy,* of Bridgeport, for the appellants (defendants).

*Jack L. Grogins,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. The issues involved in these appeals are identical. They were all argued together and may be disposed of in a single opinion. In each of the cases, there was a conviction of and sentence for violating § 53-226 of the General Statutes, which forbids anyone to engage in prostitution.

The facts are simple enough. The special service squad of the Bridgeport police department received numerous complaints over a long period of time that illicit sexual relations were being carried on in the premises located at 1022 Boston Avenue in Bridgeport. A plan was conceived by the police department to investigate complaints relating to prostitution. On October 29, 1963, at about 9:30 p.m., Maurice Eichenblatt, accompanied by Peter Freer (both connected with the police department) and a man named Marvin, knocked on the door of the premises in question. Gretchen Fergerson responded. All three men were admitted into the house and went into the living room. Eichenblatt asked: "What's doing?" Mrs. Fergerson

replied: "I got three girls and there is three of you. Take your pick—and walk in the other room." Eichenblatt and Freer then went with Mrs. Fergerson into the kitchen, where terms were discussed for the services of the defendants based upon both ordinary sexual intercourse and various other, perverse practices. The men returned to the living room, where the girls were seated. They were drinking. The "hi-fi" was playing. The lights were soft and blue. The girls were scantily clad. They wore "flimsy baby-doll pajamas made of gauzy material, very short in length coming to the middle of the thighs." Their bosoms were practically exposed. Mrs. Fergerson wore a skintight leotard. Eichenblatt selected a red-haired girl, who promptly accompanied him up the stairs towards rooms located on the second floor. Suddenly the doorbell rang. Mrs. Fergerson answered and immediately recognized Sergeant John E. Zelinski of the Bridgeport police department. She greeted him with a verbal barrage too vulgar to repeat here. She claimed the right to operate a house of prostitution as long as she paid taxes on the earnings she derived from the girls; indeed, she went so far as to insist that she had such assurance from a federal judge. All four women were taken into custody. They were charged with engaging in prostitution in violation of § 53-226; an additional charge of keeping a house of ill fame in violation of § 53-230 was placed against Mrs. Fergerson. We are not concerned in the present appeals with Mrs. Fergerson's case.[1] The other three defendants were convicted of engaging in prostitution and have appealed. None of the defendants took the witness stand; none offered any testimony upon the trial. No correc-

---

[1] The appeal in *State* v. *Fergerson,* Circuit Court, No. CR 2-12996, was set down for Monday, April 20, 1964, for oral argument before this appellate panel. The defendant Fergerson withdrew her appeal on April 17, 1964.

tions in the findings can be made; they are explicit and clear and are amply supported by the evidence. The sole question which we need to consider upon these appeals is whether the subordinate facts found by the trial court, as we have summarized them, support the ultimate conclusion that the defendants were engaged in prostitution as that term is defined by statute.

"Prostitution is not an offense at common law, but it is generally made such by statutes which make it a distinct offense." 2 Wharton, Criminal Law and Procedure, p. 582; see 2 Brill, Criminal Law § 1063. "Prostitution, to be sure, normally suggests sexual relations for hire." *Cleveland* v. *United States,* 329 U.S. 14, 17.[2] Our statute, § 53-226, includes two categories of prostitution. Under the first category, the state must prove the offering or receiving of the body (a) for sexual intercourse (b) for hire, that is to say, a promise of payment of some consideration or payment of some consideration, money or otherwise, for sexual intercourse. The only element which the state must prove under the second category is the offering or receiving of the body for promiscuous sexual intercourse; it is not necessary that it be for hire.[3] As used in the statute, the word "offering" means a

---

[2] In support of the statement, the court, in a footnote, cited the Oxford English Dictionary: "Prostitution . . . Of women: The offering of the body to indiscriminate lewdness for hire (esp. as a practice or institution); whoredom; harlotry."

[3] Connecticut is among the sixteen states whose statutes explicitly define prostitution to include promiscuous intercourse without hire. See Model Penal Code, p. 175 (Tent. Draft No. 9). The British attitude toward prostitution is quite different from ours. According to the British viewpoint, prostitution in itself is not an offense against the criminal law. "[I]t is not illegal for a woman to 'offer her body to indiscriminate lewdness for hire,' provided that she does not, in the course of doing so, commit any one of the specific acts which would bring her within the ambit of the law." Wolfenden Report, p. 132 (1963).

mere offering of the body without physical contact. See *State* v. *Haskins,* 38 N.J. Super. 250, 259. Our concern here is only with the first category. Under the Model Penal Code § 251.2 (1) (Proposed Official Draft 1962), "[a] person is guilty of prostitution . . . if . . . she: (a) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business . . . ." And "[a]n inmate," according to the code, "is a person who engages in prostitution in or through the agency of a house of prostitution." Of course, an inmate is not anyone who may be found in a house of prostitution; it is a person who is connected with the house in a way that amounts to a general holding out of her availability for sexual purposes. See Model Penal Code, comment, p. 177 (Tent. Draft No. 9). "To establish the offense [of prostitution] it is not necessary to prove any particular language or conduct. Ordinarily it is a question of fact whether the acts and words of the defendant, viewed in the light of surrounding circumstances, constitute . . . [the offense of prostitution]." *Curran* v. *United States,* 52 A.2d 121, 122 (D.C. Mun. Ct. App.); *Golden* v. *United States,* 167 A.2d 796, 797 (D.C. Mun. Ct. App.); see *State* v. *Poague,* 245 Minn. 438, 441. "A woman may be a prostitute and carry on the business of such if she so holds herself out to the world. She may on the street or in other public or private places so conduct herself as to make it clear that she is a prostitute, and that such is her occupation." *Wilson* v. *State,* 17 Ala. App. 307, 308; see *Kelly* v. *State,* 31 Ala. App. 201, cert. denied, 244 Ala. 631; note, 14 A.L.R. 1482, 1501.

Prostitution is an offense usually committed in secret. *State* v. *Sinodis,* 189 N.C. 565, 567. Surely it cannot be suggested in the cases before us that the conduct of the defendants amounted to nothing more than frivolous banter and inconsequential

flirtation. See *Golden* v. *United States,* supra. The court could properly take into account the hour of the night, the provocative surroundings, the flimsy and suggestive attire of the defendants, the prompt discussion of financial terms, the ready acceptance of the invitation—all these factors, among others, stamped the defendants as being engaged in prostitution. The judicial function "should not shut its eyes to the facts of the world and assume not to know what everybody else knows. And everybody knows that there is a difference between occasional immoralities of men and women and . . . systematized and mercenary immorality . . . ." *Caminetti* v. *United States,* 242 U.S. 470, 502 (McKenna, J., dissenting).

The facts were sufficient reasonably to support a finding, at least prima facie, that the defendants offered their bodies for sexual intercourse for hire within the meaning of the statute. "[T]he trial court could properly draw inferences from their failure to testify. Certainly when these were added to the other . . . [facts] in the case, it could reasonably conclude that the defendants had been proven guilty of the crime charged." *State* v. *Rich,* 129 Conn. 537, 540; see *State* v. *Andrews,* 150 Conn. 92, 104.

There is no error.

In this opinion KINMONTH and LEVINE, Js., concurred.