STATE OF CONNECTICUT *v.* BARBARA ALLEN

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 512

Argued January 28 – decided June 6, 1980

*Richard Emanuel,* assistant public defender, with whom was *Bruce A. Sturman,* assistant public defender, for the appellant (defendant).

*Robert E. Beach, Jr.,* assistant state's attorney, for the appellee (state).

DALY, J. After a trial to the jury the defendant was convicted of prostitution in violation of General Statutes § 53a-82. The defendant appeals from the judgment rendered on the verdict and from the denial of her motion to set aside the verdict.

The jury reasonably could have found the following facts: At approximately 1:40 a.m. on March 25, 1976, a New Haven undercover officer was stopped at a traffic light at the intersection of Park and Chapel streets. He observed the defendant approach a car stopped in front of him and open and close the passenger door. The defendant then approached the officer's car, opened the passenger door and inquired if the officer had twenty dollars. Upon hearing an affirmative response, the defendant got into the car. A conversation ensued during which the defendant offered to have sex for twenty dollars.[2]  Shortly thereafter, both noticed a marked police cruiser in the area. The defendant urged the undercover officer to say, in the event that they were stopped, that he was taking her home or something to that effect. The officer drove to a prearranged location near a school where the defendant was arrested by other officers. No sexual activity was ever engaged in nor was there any transfer of money.

[2] Although there is some dispute concerning the specific nature of the sexual service that was offered, there clearly was sufficient testimony from which the jury could conclude that an offer was made to engage in sex in exchange for money.

The defendant has assigned five counts of error in the conduct of the trial proceedings. Because our disposition of this case requires a remand for a new trial, we will first consider the defendant's challenge to the constitutionality of the prostitution statute under which she was convicted.

The defendant claims that General Statutes § 53a-82 suffers from the constitutional infirmities of vagueness and overbreadth, and that it infringes on her fundamental right of privacy. The defendant assumes a heavy burden in making this constitutional attack. In passing on the constitutionality of a legislative act, we will make every presumption and intendment in favor of its validity, and sustain the statute unless its unconstitutionality is established beyond a reasonable doubt. *New Milford* v. *SCA Services of Connecticut, Inc.,* 174 Conn. 146, 148, 384 A.2d 337 (1977); *Horton* v. *Meskill,* 172 Conn. 615, 650, 376 A.2d 359 (1977).

Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. *Stolberg* v. *Caldwell,* 175 Conn. 586, 610, 402 A.2d 763 (1978). "A statute . . . which forbids or requires conduct in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. *Baggett* v. *Bullitt,* 377 U.S. 360, 367, 84 S. Ct. 1316, 12 L. Ed. 2d 377; *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322." *State* v. *Chetcuti,* 173 Conn. 165, 167, 377 A.2d 263 (1977); *Mitchell* v. *King,* 169 Conn. 140, 142–43, 363 A.2d 68 (1975). The constitution, however, requires no more than a reasonable degree of certainty. "The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan* v. *DeGeorge,* 341 U.S. 223, 231–32, 71 S. Ct. 703, 95 L. Ed. 886 (1951); *State* v. *Chetcuti,* supra, 167–68.

General Statutes § 53a-82 provides as follows: "A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee." The defendant contends that the statutory terms "sexual conduct" and "fee" are so inherently uncertain in their meaning that they failed to apprise her that her conduct was proscribed. She claims that the statute is unconstitutionally vague and that her conviction thereunder violated her right to due process of law under the fifth and fourteenth amendments to the United States constitution and article first, § 8 of the Connecticut constitution.[3]

Due process requires only that the law give sufficient warning to enable individuals to conduct themselves so as to avoid that which is forbidden. *Rose* v. *Locke,* 423 U.S. 48, 50, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975); *State* v. *Pickering,* 180 Conn. 54, 61, 428 A.2d 322 (1980). It is recognized that many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." *Robinson* v. *United States,* 324 U.S. 282, 286, 65 S. Ct. 666, 89 L. Ed. 944 (1945); *Rose* v. *Locke,* supra. In order to ascertain a statute's meaning it is often necessary to refer to judicial opinions involving the statute, to the common law, or to legal treatises or dictionaries. *State* v. *Pickering,* supra. The defendant correctly notes that the terms "sexual conduct" and "fee" are not further defined by the penal code in the context of prostitution. It also appears that no Connecticut judicial opinion has ever interpreted the specific language of this statute. Nonetheless, the meaning of the statutory language is clear and is sufficient to warn the ordinary person of the prohibited conduct.

[3] The due process provisions of the federal and Connecticut constitutions have a common meaning so as to permit us to treat the questions on appeal as a single issue. *State* v. *Pickering,* 180 Conn. 54, 55 n.1, 428 A.2d 322 (1980); *Miller* v. *Heffernan,* 173 Conn. 506, 516, 378 A.2d 572 (1977).

While the language of this statute has not been previously construed by Connecticut courts, the identical language which appears in the New York penal code has withstood several constitutional vagueness challenges. *United States* v. *Herrera,* 584 F.2d 1137 (2d Cir. 1978); *People* v. *Costello,* 90 Misc. 2d 431, 395 N.Y.S.2d 139 (1977); *People* v. *Block,* 71 Misc. 2d 714, 337 N.Y.S.2d 153 (1972). We agree with the rationale propounded in those decisions that the terms "sexual conduct" and "fee," when appearing in the context of a statute prohibiting prostitution, have a commonly understood meaning. General Statutes § 1-1 (a) provides that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

Dictionary definitions provide a fair explanation of the meaning of these terms. "Conduct" is defined as "[b]ehavior as portrayed by that which one does or omits to do." Ballentine's Law Dictionary (3d Ed.). "Sexual" conduct would thus be defined as conduct "of, characteristic of, or involving sex, the sexes, the organs of sex and their functions, or the instincts, drives, behavior, etc. associated with sex." Webster, Second New World Dictionary. The term "fee" is generally defined to be a remuneration charged for the rendering of professional services – "Compensation often in the form of a fixed charge for professional service or for special and requested exercise of talent or of skill"; Webster, Third New International Dictionary; "[p]ayment asked or given for professional services, admissions, licenses, tuition, etc.; charge." Webster, Second New World Dictionary.

Further clarity is given to the meaning of the terms "sexual conduct" and "fee" by the fact that they appear in the context of a statute prohibiting prostitution. While certain words may appear unconstitutionally vague when viewed in a vacuum, when viewed

in the context of a statute they can provide fair notice of the conduct sought to be prohibited. *State* v. *Carter,* 89 Wash. 2d 236, 239, 570 P.2d 1218 (1977). The statute under attack is entitled "Prostitution: Class A misdemeanor." The term "prostitution" is defined as "the act or practice of indulging in promiscuous sexual relations esp. for payment." Webster, Third New International Dictionary. "Prostitution" has a commonly understood meaning which has often been commented on by courts, including our own. " 'Prostitution . . . normally suggests sexual relations for hire.' *Cleveland* v. *United States,* 329 U.S. 14, 17." *State* v. *Allen,* 2 Conn. Cir. Ct. 594, 597, 203 A.2d 248 (1964). See 77 A.L.R.3d 519.

The language of § 53a-82 is sufficiently precise to give the defendant fair notice that her conduct was prohibited. "The definition of prostitution as being a person who engages or agrees or offers to engage in sexual conduct with another person in return for a fee is not so vague as to make persons of common intelligence guess at its meaning. Although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that can be sufficiently understood and complied with by the ordinary person exercising ordinary common sense." *United States* v. *Herrera,* supra, 1149.

The defendant also claims that § 53a-82 is unconstitutionally vague on its face. Although the general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue, a statute may be challenged for vagueness on its face where it has the potential to inhibit the exercise of the first amendment freedoms of free speech and assembly. *Smith* v. *Goguen,* 415 U.S. 566, 573, 94 S. Ct. 1242, 39 L.Ed. 2d 605 (1974); *State* v. *Pickering,* supra, 57 n.3. The defendant claims that the prostitution statute infringes upon protected first amendment freedoms, and that she therefore

may challenge the validity of its application to marginal situations even though her own conduct may clearly fall within the statute's proscriptions. This aspect of the defendant's constitutional vagueness challenge is essentially identical to her claim of overbreadth. While the vices of statutory vagueness and overbreadth are distinct; *Mitchell* v. *King, supra,* 143; they are often congruent and are functionally indistinguishable when applied in the area of the first amendment. See note, "The First Amendment Overbreadth Doctrine," 83 Harv. L. Rev. 844, 845 (1970). Statutory language that is overbroad may also inhibit the exercise of first amendment freedoms.

Statutes regulating public morals, including the regulation and punishment of prostitution and related offenses, fall within the exercise of the state's police power. 63 Am. Jur. 2d, Prostitution § 2. The state clearly has a legitimate interest in regulating the commercialization of sex. *People* v. *Costello, supra.* While § 53a-82 may arguably have some impact on freedom of association, any such impact is minimal and is clearly permissible as incidental to the furtherance of a subtantial government interest. *United States* v. *O'Brien,* 391 U.S. 367, 377, 88A S. Ct. 1673, 20 L. Ed. 2d 672 (1968). Because the statute prohibits offering or agreeing to engage in sexual conduct for a fee, it also has some impact on speech. This category of speech, however, is not within the protective embrace of the first amendment. Speech incident to solicitation for prostitution advances no social value; it is essentially commercial in nature and is doubtlessly intended to sell a product. *Morgan* v. *Detroit,* 389 F. Sup. 922, 926 (D. Mich. 1975). As such it is within the reach of state regulation. See *United States* v. *Moses,* 339 A.2d 46 (D.C. App.), cert. denied, 426 U.S. 920, 96 S. Ct. 2624, 49 L. Ed. 2d 373 (1976); *District of Columbia* v. *Garcia,* 335 A.2d 217 (D.C. App. 1975), cert. denied, 423 U.S. 894, 96 S. Ct. 192, 46 L. Ed. 2d 125 (1975); *Cherry* v. *State,* 18 Md. App. 252, 306 A.2d 634 (1973); *People* v. *Willmott,* 67

Misc. 2d 709, 324 N.Y.S.2d 616 (1971); *State* v. *Carter,* 89 Wash. 2d 236, 570 P.2d 1218 (1977). "[W]hile freedom of communicating information and disseminating opinion enjoys the fullest protection of the first amendment, the constitution imposes no such restraint on government as respects purely commercial advertising." *Morgan* v. *Detroit,* supra, 927.

Because we hold that this statute has no real and substantial impact on first amendment freedoms, the defendant's vagueness and overbreadth challenges to the facial validity of the statute must fail.

The final theory upon which the defendant assails the statute is her fundamental right to privacy under the federal and state constitutions. It appears that the constitutional right to privacy under the federal and state constitutions has never been extended to encompass prostitutes plying their trade on the street, and the defendant has cited no authority which persuades us so to extend it. See, e.g., contra, *Morgan* v. *Detroit,* supra; *United States* v. *Moses,* supra; *District of Columbia* v. *Garcia,* supra.

The defendant has also assigned error to the court's instructions to the jury with respect to intent. Because our ruling on this issue is dispositive of the case, we need not address the other claims of error.

Although General Statutes § 53a-82 does not expressly define a mental element, a general intent to do the proscribed act of one's own volition is an element of the crime of prostitution.[4] See *State* v. *Husser,* 161 Conn. 513, 516, 290 A.2d 336 (1971). The trial court charged, in part, on the element of intent as follows: "Now, in any crime, of course, we have the element of intent, and ordinarily, the state has no obligation to prove intent, and that is because a person is presumed to have intended to do the act which he did do. Accordingly, until some evidence enters

---

[4] Although the trial court twice referred to "specific intent" in the charge, the mental state required here is only the general intent to do the proscribed act. *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240 (1971).

into the case that indicates that the intent to commit the crime alleged was not present, or could not be present because of some condition, up until that point the state has the right to rely on the presumption that the accused intended to commit the acts which he did commit."

The defendant claims that this charge impermissibly shifted the burden of proof on the element of intent from the prosecution to her. Although the defendant took no exception to this portion of the charge, we consider the question as one involving exceptional circumstances because it involves the defendant's constitutional right to a fair trial. *State* v. *Moye,* 177 Conn. 487, 490, 418 A.2d 870 (1979); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

In *Sandstrom* v. *Montana,* 442 U.S. 510, 513, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), the United States Supreme Court held unconstitutional the jury instruction that " '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' " The vice of such an instruction is that the jury may reasonably interpret it to establish the defendant's intent as a conclusion, or to shift the burden of proof on the element of intent to the accused. Because the jury instruction given in the present case could have precisely the same effect, it is constitutionally impermissible. *Sandstrom* v. *Montana,* supra; *State* v. *Harrison,* 178 Conn. 689, 695, 425 A.2d 111 (1979). The other instructions given were inadequate to cure the harmful potential of that portion of the charge.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion PARSKEY and O'BRIEN, Js., concurred.