**Brenda TISDALE, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 04–81–00181–CR.**

Court of Appeals of Texas, San Antonio.

Sept. 22, 1982.

Discretionary Review Refused Jan. 12, 1983.

Marvin B. Zimmerman, San Antonio, for appellant.

Bill White, Dist. Atty., Douglas McNeel, Asst. Dist. Atty., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and BASKIN, JJ.

### OPINION

BASKIN, Justice.

This is an appeal from a conviction for prostitution. Tex.Penal Code Ann. § 43.02 (Vernon Supp.1982). Appellant was convicted by a jury in a county court at law on one count under the statute, and the jury assessed punishment at one hundred eighty (180) days' confinement in the Bexar County Jail.[1]

The prostitution statute provides:

(a) A person commits an offense if he knowingly:

(1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; or

(2) solicits another in a public place to engage with him in sexual conduct for hire.

(b) An offense is established under Subsection (a)(1) of this section whether the actor is to receive or pay a fee. An offense is established under Subsection (a)(2) of this section whether the actor solicits a person to hire him or offers to hire the person solicited.

(c) An offense under this section is a Class B Misdemeanor, unless the actor has been convicted previously under this section, in which event it is a Class A misdemeanor.

Following the trial of the case, the parties filed an Agreed Statement of Facts. Paragraph II of the Agreed Statement of Facts provides:

A jury was impaneled and heard testimony from Officer William Overstreet who testified that at approximately 3:00 a.m., in the early hours of the 2nd day of March, 1978, he was working undercover vice and driving his personal pick-up truck in the 100 block of Casino in San Antonio, Bexar County, Texas, when the Defendant, BRENDA TISDALE, motioned for him to pull his truck over to the curb. Officer Overstreet did so, and the Defendant approached his vehicle. She then offered to engage him in sexual intercourse for a fee payable to her in the amount of Fifteen ($15.00) Dollars. The jury retired and then found the Defendant guilty. The sufficiency of the evidence is not challenged.

The appellant bases her appeal on two (2) grounds of error. By ground of error num-

---

1. At the time of her trial and conviction in this cause, fourteen (14) additional prostitution cases were pending against appellant in the same court. On August 15, 1978, appellant entered a plea of not guilty on the remaining fourteen (14) cases. Appellant, however, stipulated that all allegations contained in each of the fourteen (14) informations were true and correct. The trial court found appellant guilty in each case and assessed punishment at one hundred eighty (180) days' confinement in the Bexar County Jail with each of these sentences to run concurrently with the sentence in this case. Each of the fourteen (14) additional convictions is being appealed separately but on the same grounds as this cause; in fact, identical briefs have been filed in all fifteen (15) cases. In order to minimize confusion of dates and facts, we deal here only with the case before us; and memorandum opinions will be filed in each of the other fourteen (14) cases.

ber one, she asserts that section 43.02(a)(1) of the Texas Penal Code is unconstitutional because it deprives individuals of their right to privacy. In her ground of error number two, appellant contends that section 43.-02(a)(1) of the Texas Penal Code is unconstitutionally overbroad on its face because it sweeps within its ambit certain conduct protected by the United States Constitution.

Before we address these two (2) grounds of error, we deem it helpful to review the factual and legal admissions made by appellant which have narrowed and sharpened her constitutional attacks on this statute. Additionally, we must consider whether appellant has standing to assert the claims upon which she relies.

The first full paragraph on page 2 of appellant's brief reads as follows:

Appellant would admit that in each of the fifteen (15) cases she did in fact attempt to solicit an undercover vice-officer in a public place to engage her in sexual conduct for a fee payable to Appellant. The State of Texas elected not to charge Appellant with violating Article 43.-02(a)(2) of the Texas Penal Code which states: "A person commits an offense if he knowingly (2) solicits another in a public place to engage with him in sexual conduct for hire." Appellant would not question the constitutionality of this statute, because the police power of the Constitution clearly allows the State to regulate conduct in a public place. However, the State has elected to prosecute Appellant for a violation of Article 43.02(a)(1), which states "A person commits an offense if he knowingly: (1) offers to engage, agrees to engage, or engages in sexual conduct for a fee;" it is this statute that Appellant will show the Court is unconstitutional on its face.

This admission by appellant conforms with the Agreed Statement of Facts which states that at approximately 3:00 a.m. on March 2, 1978, appellant motioned for an undercover officer to pull his truck over to the curb, and when he did so she approached his vehicle and offered to engage him in sexual intercourse for a fee payable to her. It is therefore undisputed and indeed agreed by the parties that appellant was guilty of, and could have been convicted of, prostitution as it is defined in section 43.02(a)(2). It is equally undisputed that appellant is guilty of prostitution as it is defined in section 43.02(a)(1) unless her activity as described in the Agreed Statement of Facts brings her within the protection of one or more provisions of the Constitution of the United States, with particular reference to right of privacy and overbreadth of a criminal statute.

■ The State challenges Brenda Tisdale's standing to attack the prostitution statute on the grounds that it is unconstitutionally overbroad and that it invades her constitutionally guaranteed right of privacy. The State points out that appellant concedes in her brief that there is a justified State interest in banning the form of prostitution practiced by call girls and brothel workers and she, in this case, can argue only hypothetically that enforcement of the statute could conceivably violate the constitutional rights of others. The State also points out that she presents no claim that her arrest and conviction under the statute violated her right to privacy.

Supreme Court decisions do not support the attack on standing. In *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973), Justice White adverts to the general principles that a person to whom a statute may be constitutionally applied will not be heard to challenge it on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the court. Also, constitutional rights are personal and may not be asserted vicariously. The Court has, however, engrafted some exceptions onto these principles. One such exception protects individuals not parties to a particular suit who stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves. Another exception has been carved out to protect non-litigants whose First Amendment rights may be in jeopardy. Attacks on overbreadth, particu-

larly where the statutes seek to regulate spoken words only, have been entertained by the Court, "with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965). Since the appellant here attacks the prostitution statute both on the grounds of overbreadth and right of privacy, each of which may be undergirded by the First Amendment, we hold that she has standing to bring her appeal before this court.

Since the appellant has chosen to limit her attack on her conviction to violation of rights under the Constitution of the United States, it seems appropriate then to review the development by the United States Supreme Court of rules of interpretation and application in these sensitive areas.

Although the Constitution of the United States does not explicitly mention any right of privacy, the Supreme Court has in various factual and legal settings recognized that a right of personal privacy is constitutionally protected. In *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the Court held unconstitutional a Connecticut statute which prohibited and made criminal the sale of contraceptives. The Court held that this statute invaded the right of privacy of the Griswolds, who were a married couple. The opinion is unclear, however, whether the protection against prohibition of the use of contraceptives was limited to married people or whether it was also extended to the intimacy and choice of individuals. Various justices writing in *Griswold* found the roots of the right of privacy in different portions of the Constitution in the First Amendment and made applicable to the states through the Due Process Clause of the Fourteenth Amendment; in the penumbra of the First Amendment freedoms; in "zones of privacy" and "liberty" protected in the Fourteenth Amendment Due Process Clause. Others felt that it inhered in the Ninth Amendment. There is some particularly interesting language by Justices Harlan and White that the right of privacy might be found in the Due Process Clause of the Fourteenth Amendment and need not be included in some activity protected in the First through Eighth Amendments of the Constitution.

In *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), the Supreme Court relied upon the right of privacy when it struck down Virginia's antimiscegenation statute, holding it unconstitutional under both the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The right to possess obscene material in one's home was upheld in *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), where the right of privacy was found to inhere in the First and Fourteenth Amendments. The Supreme Court in *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), struck down a Massachusetts statute under which the defendant had been convicted of giving away some contraceptive foam. The Court addressed the issue apparently left unanswered by *Griswold v. Connecticut, supra,* and held that the right of privacy "is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion . . . ." *Eisenstadt v. Baird, supra* at 453, 92 S.Ct. at 1038.

*Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), struck down the Texas abortion statute, because among other things, it violated the right of privacy, the roots of which were found to be in substantive due process. One of the most recent cases with which the Supreme Court has dealt with in the matter of right of privacy is *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). There the Court struck down the New York "education" law which made it illegal to distribute contraceptives to anyone under the age of 16, to advertise or display contraceptives, and for anyone other than a pharmacist to distribute contraceptives. Relying upon the Due Process Clause of the Fourteenth Amendment, the Court held this statute invaded and violated the right of privacy. In *Paris Adult Theatre v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37

L.Ed.2d 446 (1973), the Court ordered the reevaluation of the Georgia obscenity laws in light of First and Fourteenth Amendment standards, declining to hold that there is a constitutional right of privacy "to watch obscene movies in places of public accommodation." *Id.* at 66, 93 S.Ct. at 2639. While the Court in *Carey* noted that "the outer limits of this aspect of privacy have not been marked by the Court," in *Paris Adult Theatre* the Court gives affirmative indication that there are indeed outer limits to the right of personal privacy. It is apparent that the right of privacy protects the individual in Georgia as he screens an obscene movie in the privacy of his home, but that same right of privacy may not extend to the theatre operator who for a charge shows the same obscene film in his theatre.

The appellant speaks of the "sanctity of a man's home and the privacies of life." She says that she is not advocating an unequivocal right to engage in sexual conduct in all circumstances and recognizes that the Supreme Court has ruled that the right of privacy, insofar as what one may do with his or her own body, is not an unqualified right. She acknowledges that the right of privacy must be weighed against important state interests in regulating prohibited conduct. She admits that, "To justify the criminalization of offering to engage, agreeing to engage, or engaging in sexual conduct for a fee, the State's interests would include protecting the health, safety and welfare of the population at large," but insists that the legitimacy of those interests is not at issue here.

■ The Legislature has made it a crime to *offer to engage, agree to engage, or engage in sexual conduct for a fee,* which is simply another way of stating that it is illegal in this State to engage in commercial sex. Appellant argues that the word "fee" means no more than some type of consideration, quoting Black's Law Dictionary, Fourth Edition, to define fee as "compensation given for ... something done or to be done." New York has a prostitution statute which prohibits the same activity as does our statute, New York Penal Law § 230.00 (McKinney 1980), and a New York Court considering the meaning of the word "fee" as used in that statute concluded,

Webster's New International Dictionary of the English Language (Second Edition—Unabridged [1947] at page 928 defines "fee" as:

"Compensation, often a fixed charge, for *professional service* or for special and requested exercise of *talent* or of *skill,* as by an artist; as a *fee* for consultation; a retaining *fee.*" (Emphasis supplied).

Corpus Juris Secundum devotes three pages to various definitions of the word "fee". It is variously defined as:

"compensation to *professional* men, a remuneration for services rendered in the line of their *professions*"; "recompense for official or *professional services*"; and "reward, compensation, or wage given to one for the performance of *professional services.*" ("Fee", 36A C.J.S. pp. 248–249). (Emphasis supplied).

The fair import of the word "fee" then is payment in return for *professional* services rendered. It is not intended facetiously to point out here that prostitution has long been euphemistically known as "the oldest profession". "Fee" is Penal Law § 230.00 can fairly be said to connote professionalism. It restricts the purview of the statute. For example, it would eliminate the situation (suggested by the defendants) of a wife who withholds the performance of her conjugal duties unless her husband gives her a mink coat. It further defines and limits the type of behavior the Legislature intended as criminal. [All emphasis supplied by New York Court.]

*People v. Block,* 71 Misc.2d 714, 337 N.Y. S.2d 153, 157 (1972). *See People v. Costello,* 90 Misc.2d 431, 395 N.Y.S.2d 139 (1977), which quotes and follows *Block.* We agree with the New York Courts, and adopt their definition of "fee" as being applicable to section 43.02(a)(1) of the Texas Penal Code.

■ Answering the right of privacy argument of the appellant, we hold that enactment of this statute to protect the

health, safety and welfare of the population at large was clearly within the province and discretion of the legislature. We hold that the first ground of error is without merit, and it is overruled.

The second ground of error raised by appellant is that the language of section 43.02(a)(1) is unconstitutionally overbroad on its face because it sweeps within its ambit certain conduct protected by the Constitution of the United States. She argues overbreadth because there is no exclusion in the statute for sexual conduct which might involve the bartering process between husband and wife or between other consenting adults in the privacy of their own home. Appellant then gives five (5) examples of sexual conduct between husband and wife, young lovers, secretary and boss, etc., in which she inferentially suggests that the participants might be guilty of prostitution.[2]

Appellant agrees that there is justified state interest in banning the form of prostitution practiced by call girls and brothel workers and she has even agreed that the form of prostitution which she practices, that of a public streetwalker, is within the ambit of the State's right to control or forbid. Appellant's concern is that since there is no judicial or legislative definition of the word "fee", or even an explicit statement of the limits of that conduct which the statute seeks to prevent, this court must

be made to realize that enforcement of section 43.02(a)(1) of the Texas Penal Code "will be arbitrary and standardless, allowing the police, judge and/or jury to decide the applicability of the statute." Our Court of Criminal Appeals, however, in *McCarty v. State,* 616 S.W.2d 194 (Tex.Cr.App.1981), has declared the same statutory provision to be constitutional as against a very similar attack. In *McCarty* the appellant argued that the term "offer" was unconstitutionally vague. The Court of Criminal Appeals referred to the New York prostitution statute, *supra,* which provides:

A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.

The Court in *McCarty* quoted from *United States v. Herrera,* 584 F.2d 1137 (2d Cir. 1978), which upheld the New York statute against a similar challenge:

The definition of prostitution as being a person who engages or agrees or offers to engage in sexual conduct with another person in return for a fee is not so vague as to make persons of common intelligence guess at its meaning. Although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that can be sufficiently understood and complied with by the ordinary person exercising common sense. Moreover, even if the outermost

**2.** Example No. 1. A husband and wife are reaching the end of another day, the husband suggests a little sex before falling asleep, the wife states that she is not in the mood for sex, the conversation goes on to what the wife did during the day, she saw a new dress on a shopping trip, the husband offers to buy the dress for the wife if she submits to his request for sex, the wife decides to do so. Are these people guilty of Prostitution?

Example No. 2. A young man meets a young woman and in the course of conversation suggests a romantic dinner by candle light in his apartment with the obvious inference that the evening should end in his bedroom, if the young lady accepts his offer, is she a Prostitute?

Example No. 3. An attorney from Dallas has a case to argue before the Court of Criminal Appeals in Austin, his plans are to spend the night in Austin prior to his court appearance

the next morning. He invites his young lady friend to accompany him on the trip, she knows full well that his invitation includes sleeping in the same bed and engaging in sexual relations. Are these people guilty of Prostitution?

Example No. 4. A secretary becomes friendly with her boss, so friendly in fact that they wind up in the same bed together, as a direct result of their affection she receives a raise in pay. Are these people guilty of Prostitution?

Example No. 5. A young woman who is dating a young lawyer receives a traffic citation, she requests that her friend represent her in connection with this legal matter. In the course of their evening together they engage in sexual relations, the traffic citation is dismissed and the young woman is never billed for legal services rendered. Are these people guilty of Prostitution?

boundaries of the statute may be imprecise, any such uncertainty has little relevance here where the defendant's conduct falls squarely within the "hardcore" of the statute's proscriptions.

*United States v. Herrera, supra* at 1149. The Court of Criminal Appeals went on to say that the definition of prostitution in section 43.02 is not so vague as to make persons of common intelligence guess its meaning. This would seem to be a direct answer to the appellant's statement in her brief that the language employed within the statute she attacks is of "questionable clarity." She admits "the words on their face are clear as to what conduct is sought to be prohibited," but the controversy arises because these very same words lend themselves, she says, to a reasonable interpretation that will ban almost all sexual conduct.

The Connecticut statute is also the same as the Texas and New York statutes. In *State v. Allen,* 37 Conn.Supp. 506, 424 A.2d 651 (Super.Ct. of Conn.1980), the court cites *Herrera, supra, Costello, supra,* and *Block, supra,* in withstanding attacks on vagueness and overbreadth. *Allen* also upheld the validity of the Connecticut statute against a claim of violation of privacy.

█ Using the Second Circuit's expression in *Herrera,* the appellant's conduct in this case falls squarely within the "hardcore" of our statute's proscriptions. The Supreme Court has exercised great caution before declaring a statute facially overbroad and thus unconstitutional. Such action has been employed sparingly. *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Broadrick v. Oklahoma, supra.* A state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), *Broadrick v. Oklahoma, supra.*

█ We have found no cases of convictions under section 43.02(a)(1) except those in which the Texas courts have confined prosecution and conviction to situations involving commercial sex, that is an offer or agreement or actual act of sexual conduct for a fee. The plain and ordinary meaning of the term "fee" as involving commercial sale of sexual services has been employed in all of these cases. Appellant's hypothetical situations do not persuade us that the term "fee" is to be understood to include virtually any type of exchange between parties. *See Floyd v. State,* 575 S.W.2d 21 (Tex.Cr. App.1978). The Legislature's meaning is obvious, and it is inescapable that this statute is readily subject to a narrowing construction by the State courts. Our courts have utilized a case by case analysis of the fact situation in prostitution prosecutions; and we apply such narrow construction here. Under *Broadrick* and *Erznoznik,* as well as our own Texas cases, we find appellant's claim of overbreadth to be without merit and overrule her second ground of error.

We affirm the judgment of the trial court.