Mark S. MUSE, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1386.

District of Columbia Court of Appeals.

Submitted Sept. 16, 1986.
Decided March 23, 1987.

Ethel Schindler, Washington, D.C., appointed by this court, was on the brief for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Larry R. Parkinson, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before PRYOR, Chief Judge, and MACK and ROGERS, Associate Judges.

PER CURIAM:

In this case, appellant Mark S. Muse was convicted after a bench trial on stipulated facts of one count of solicitation for purposes of prostitution. D.C.Code § 22–2701 (1986 Supp.). On appeal, appellant asserts that insufficient evidence supported his conviction, and that the definition of prostitution in D.C.Code § 22–2701.1(1) renders the statute under which he was convicted unconstitutionally vague and overbroad. We reject these contentions and affirm.

I

The trial in this case was held on stipulated facts, which consisted exclusively of the factual narrative contained in Police Report 163 detailing the circumstances of appellant's arrest. In relevant part, the contents of Police Report 163 were as follows:

On Sunday June 30, 1985 ... [t]he following conversation took place between the undersigned officer and the defendant [at the corner of 14th and Rhode Island Avenues, N.W.]:

DEF: Hi you want to buy some gold?

OFF: No.

DEF: Well do you think I can give you some gold for a date?

OFF: I don't know.

DEF: I need some loving and I think you will get a good deal and so will I.

OFF: Is that so. I don't think my man would like that.

DEF: Is that your man over there?

OFF: Yes, it is.

DEF: I'll go and ask him myself.... Defendant then engaged in a conversation with [the observer]. Defendant then responds back to the undersigned officer after the conversation ends.

DEF: Your man says it's alright. He gives you the green light.

OFF: What exactly do you want?

DEF: I want to have sex. I want to make love to you, you know f* * *.

OFF: Okay.

DEF: The defendant gives the undersigned officer the chain of yellow metal rope type and says let's go.

While the undersigned officer and the defendant walk north on 14th St. N.W., [the two observers] approach him and he is placed under arrest.

Based on this evidence, appellant was found guilty of solicitation for prostitution and sentenced to six months unsupervised probation. This appeal followed.

II

Under D.C.Code § 22–2701 (1981), it is unlawful for "any person to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons 16 years of age or over in the District of Columbia, for the purpose of prostitution...." [1] "Prostitution" is defined in D.C.Code § 22–2701.1(1) (1986 Supp.), as "the engaging, agreeing to engage, or offering to engage in sexual acts or contacts with another person in return for a fee." While acknowledging that he gave the undercover police officer a gold necklace in exchange for anticipated sexual intercourse, appellant argues that insufficient evidence supported his conviction because, he asserts, the term "fee" in D.C. Code § 22–2701.1(1) refers only to money. In the alternative, appellant argues that insufficient evidence supported his conviction because the government failed to present evidence establishing that the neck-

1. D.C.Code § 22–2701 provides in its entirety:
   It shall not be lawful for any person to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons 16 years of age or over in the District of Columbia, for the purpose of prostitution, or any other immoral or lewd purpose, under a penalty of not more than $300 or imprisonment for not more than 90 days, or both. Inviting, enticing, or persuading, or addressing for the purpose of inviting, enticing, or persuading for the purpose of prostitution includes, but is not limited to, remaining or wandering about a public place and: (1) Repeatedly beckoning to, repeatedly stopping, repeatedly attempting to stop, or repeatedly attempting to engage passers-by in conversation; (2) stopping or attempting to stop motor vehicles; or (3) repeatedly interfering with the free passage of other persons; for the purposes of prostitution.

lace he gave to the undercover police officer had any monetary value. We reject these contentions.

Our cases have repeatedly recognized that solicitation for purposes of prostitution involves "an invitation to commercial sexual intercourse" in the context of "a purely commercial venture." *United States v. Moses*, 339 A.2d 46, 52 (D.C.1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976); *see also Dinkins v. United States*, 374 A.2d 292, 298 (D.C. 1977) (en banc) (characterizing solicitation cases in the District as requiring that the transaction "be of a commercial nature") (Kelly, J., dissenting); *Garrett v. United States*, 339 A.2d 372, 373 (D.C.1975) (per curiam) (characterizing evidence as establishing that defendant was a working prostitute engaged in a "commercial transaction"); *Hall v. United States*, 34 A.2d 631, 632 (D.C.Mun.App.1943) (characterizing evidence as establishing transaction to be "unmistakably commercial").[2]

The term "fee" as used in § 22–2701.1(1) is not defined by statute, nor has it been construed by this court. In light of the underlying commercial nature of solicitation for prostitution, however, we conclude, as have courts in other jurisdictions considering the question, that the term "fee" in this context refers to "payment in return for professional services rendered." *State v. Allen*, 37 Conn.Sup. 506, 509–12, 424 A.2d 651, 653–54 (1980); *Cherry v. Koch*, 129 Misc.2d 346, 355–56 & n. 7, 491 N.Y.S.2d 934, 943 & n. 7 (Sup.Ct.1985); *People v. Block*, 71 Misc.2d 714, 716, 337 N.Y.S.2d 153, 157 (Nassau Cty.Ct.1972); *Tisdale v. State*, Tex.App., 640 S.W.2d 409, 413 (1982).[3]

Given this definition of the term "fee," we perceive no basis for adopting appellant's suggestion that the term be further limited to require "payment for professional services" in the form of money. While our solicitation cases have typically concerned proposed exchanges of money for sexual acts, *see, e.g., Dinkins v. United States, supra*, 374 A.2d at 294 (fee of $13 discussed); *Garrett v. United States, supra*, 339 A.2d at 373 (inquiry of arresting officer as to how much money he had, along with other factors, "revealed ample professionalism"); *Curran v. United States*, 52 A.2d 121, 122 (D.C.Mun.App. 1947) (discussion of $35 and $20 as price for some "loving"); *Hall v. United States, supra*, 34 A.2d at 631 (discussion of $5), we see no reason why this commercial transac-

---

2. In *United States v. Moses, supra*, 339 A.2d at 52, we described the commercial nature of solicitation for prostitution as follows:

> The prostitute's invitation to commercial sexual intercourse is not an essential part of any exposition of ideas. The conversation's objective is to settle the terms of an intended business transaction, and its content is likely to be wholly confined to the essentials of the bargain....
>
> We also take note of the interests of the respective participants to a solicitation for prostitution. The interest of the prostitute is to make as much money in as little time as possible, and, therefore, to dispense with unnecessary talk. The interest of the pretended bargainers for the prostitutes' services in these cases was to control crime; in other circumstances, where the would-be purchaser is genuinely in the market, his interest would appear to be to obtain some form of sexual release. Those varying interests (excepting that of the undercover police officer) connote a purely commercial venture in which each party is out solely for herself and himself.

3. N.Y.PENAL LAW § 230.00 (McKinney 1980) defines prostitution in the same manner as D.C. Code § 22–2701.1(1). A New York court consid-

ering the definition of the term "fee" in that statute concluded:

> Webster's New International Dictionary of the English Language (Second Edition—Unabridged [1947] at page 928 defines "fee" as:
> "Compensation, often a fixed charge, for *professional service* or for special and requested exercise of *talent* or of *skill* as by an artist; as a fee for consultation; a retaining fee." (Emphasis supplied).
> Corpus Juris Secundum devotes three pages to various definitions of the word "fee". It is variously defined as:
> "compensation to *professional* men, a remuneration for services rendered in the line of their *professions*"; "recompense for official or *professional services*"; and "reward, compensation, or wage given to one for the performance of *professional services*." ("Fee", 36A C.J.S. pp. 248–249). (Emphasis supplied).
> The fair import of the word "fee" then is payment in return for *professional* services rendered.

*People v. Block, supra*, 71 Misc.2d at 716, 337 N.Y.S.2d at 157 (emphasis in original).

tion could not involve payment in a form other than money. Indeed, in *Harris v. United States*, 293 A.2d 851, 854 (D.C. 1972), *rev'd on other grounds*, 315 A.2d 569 (1974) (en banc), we recognized that "[a]n essential element of prostitution is money or *material gain* in exchange for illicit sexual activity." (Emphasis added.)

■ The facts of the present case illustrate the soundness of this approach. Here, appellant offered to exchange his gold necklace for a "date" with the undercover police officer. Appellant's statement, "I need some loving and I think you will get a good deal and so will I," clearly illustrates the commercial nature of the proposed exchange. Although no money was involved in appellant's suggested bargain, this transaction is precisely the type of purely commercial exchange of sexual acts for a "fee" that is encompassed by the definition of prostitution in D.C.Code § 22–2701.1(1).

■ Further, we reject appellant's assertion that insufficient evidence supported his conviction because the evidence failed to establish that the gold necklace he offered in exchange for sexual acts had some value. Treating the term "fee" in D.C. Code § 22–2701.1(1) as an element of the government's case, all that is required, in our view, is that the evidence establish that the item offered have some value, however minimal.[4] *Cf. Leftridge v. United States*, 410 A.2d 1388, 1391 (D.C.1980) (per curiam) (in petit larceny cases, the government need not establish the monetary value of the items taken; only real value to owner need be shown); *Jones v. United States*, 345 A.2d 144, 145–46 (D.C.1975) (per curiam) (same).

In this case, we conclude that sufficient evidence supported the trial judge's conclusion that the item appellant offered as a "fee" had some value.

## III

Lastly, appellant asserts that unless we construe the term "fee" in D.C.Code §§ 22–2701.1(1) as limited only to money, the statute "would boomerang ... into fields of unconstitutional ... vagueness and overbreadth." In essence, appellant argues that unless the term "fee" in D.C. Code § 22–2701.1(1) is given the narrow meaning he suggests, a variety of innocent conduct will be brought within its purview, and "men of common intelligence" will be forced to "guess at its meaning." *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *see also Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ Because this statute does not implicate first amendment values, *see United States v. Moses, supra*, 339 A.2d at 50–54, appellant does not have standing to challenge it as being overbroad. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 154–55, 99 S.Ct. 2213, 2223–224, 60 L.Ed.2d 777 (1979) (no standing to argue statute "would be unconstitutional if applied to third parties in hypothetical situations"); *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Appellant does, however, have standing on the vagueness claim and can argue that the statute provides him with no fair warning of the criminality of his actions. *See Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

We must reject this contention summarily in light of our previous discussion of the common meaning of the word "fee" and the commonly understood commercial nature and context of prostitution. Due process is satisfied when the statute "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States v. Petrillo*, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1541–542, 91 L.Ed. 1877 (1947); *see also Roth v. United States*, 354 U.S.

---

4. We recognize that D.C.Code § 22–2701 prohibits solicitation for purposes of prostitution, and not the act of prostitution itself as defined in D.C.Code § 22–2701.1(1). Thus, all that is required for purposes of D.C.Code § 22–2701 is that the item *offered* in exchange for sexual acts

have some value, however minimal. Because it is solicitation for purposes of prostitution that is illegal in the District of Columbia—and not prostitution itself—it is irrelevant whether the item offered turns out, in actuality, to have value, or even whether it exists at all.

476, 491–92, 77 S.Ct. 1304, 1312–313, 1 L.Ed.2d 1498 (1957) (definition of obscenity). Section 22–2701 starkly delineates the crime of soliciting for prostitution, and we have so held and elaborated on numerous occasions. *See Eissa v. United States,* 485 A.2d 610, 612 (D.C.1984); *Riley v. United States,* 298 A.2d 228 (D.C.1972), *cert. denied,* 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973); *Hawkins v. United States,* 105 A.2d 250 (D.C.Mun.App.1954).

*Affirmed.*