996 A.2d 350

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Jeffrey S. MARCALUS.**

**Misc. Docket AG No. 2, Sept. Term, 2009.**

Court of Appeals of Maryland.

May 18, 2010.

502

**504**

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Com'n of Maryland), for Petitioner.

Andrew Jay Graham, Baltimore, MD, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, Judge.

The Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, petitioned this Court for disbarment of Respondent, attorney Jeffrey S. Marcalus. The AGC alleged that Marcalus had violated Rules 8.4(b), 8.4(c), and 8.4(d) of the Maryland Rules of Professional Conduct.[1] The Circuit Court for Anne Arundel County concluded that Marcalus had violated Rules 8.4(b) and 8.4(d). We agree with the Circuit Court, but find that Marcalus's actions do not warrant disbarment. We will instead suspend Marcalus from the practice of law in Maryland for sixty days, with the suspension commencing thirty days after the filing of this opinion.

## FACTS AND LEGAL PROCEEDINGS

Sitting as a hearing examiner, the Circuit Court for Anne Arundel County made the following findings of fact, among others, by clear and convincing evidence:[2]

---

1. Maryland Rule 8.4 provides that:
   It is professional misconduct for a lawyer to:
   * * *
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice[.]

2. We have numbered the hearing judge's findings of facts and conclusions of law for convenience. Some footnotes have been omitted, and others renumbered. Citations to exhibits are also omitted.

1. William Johns is an investigator with the Annapolis Police Department. . . .

2. On January 29, 2008, Investigator Johns was investigating allegations made by [a woman, who for privacy reasons will be referred to as "Michelle"] that Larry Berlin forcibly raped her in the office building at 1612 McGuckian Street. Sergeant Dave Garcia, a member of the [Annapolis Police Department], assisted in the investigation. Mr. Berlin and Mr. Marcalus, who was representing Mr. Berlin, met with the officers at the police station.

3. During the January 29, 2008 meeting, Mr. Marcalus and Mr. Berlin learned that [Michelle] was Mr. Berlin's accuser. Following the meeting, Mr. Marcalus terminated his representation of Mr. Berlin because he was personally acquainted with the putative victim.

4. On January 30, 2008, Mr. Marcalus called Sergeant Garcia and asked if he could meet with both Sergeant Garcia and Investigator Johns ["the Officers"]. [The Officers] agreed to the meeting and Mr. Marcalus appeared at the station at approximately 11:00 [A.M.]. No one else was present at this meeting and only [the Officers] heard what Mr. Marcalus said. Mr. Marcalus told the Officers that he no longer represented Mr. Berlin and was there, not as an attorney, but to disclose personal information about Mr. Berlin's accuser.

5. During the meeting, Mr. Marcalus told the Officers that he used to have an office at 1612 McGuckian Street, before [Michelle] started working there, and that he was familiar with [Michelle's] friend, Denise, who worked in that building. He also said that Denise told him [other information about Michelle's lifestyle and personal habits]. According to Investigator Johns, Mr. Marcalus stated that he had sexual relations with [Michelle] multiple times.

6. Mr. Marcalus also disclosed that during this period of time he was taking prescription pain medication, which he identified as Vicodin, for an injury. Sergeant Garcia knew that the medicine was a pain killer and recalled that Mr.

Marcalus admitted to giving Denise some of his prescription Vicodin.

7. Mr. Marcalus stated that sometime after he had moved his office from 1612 McGuckin Street, he called Chesapeake Cartridge, Mr. Berlin's business located at [that address]. Investigator Johns recalled that Mr. Marcalus stated that the call occurred several weeks before their meeting on January 30, 2009. Mr. Marcalus spoke to [Michelle], Mr. Berlin's employee, about obtaining some toner cartridge refills. [Michelle] told Mr. Marcalus that she would have to check with Mr. Berlin about the request. Approximately 10 minutes later, [Michelle] returned [Marcalus's] call but asked if he could provide her with Vicodin. Mr. Marcalus responded to this request by asking her "what was in it for him?" [Michelle] responded that she would perform fellatio. Mr. Marcalus told the Officers that after this conversation, he met with [Michelle] in the downstairs women's bathroom at 1612 McGuckian Street, she performed fellatio, and he gave [Michelle] the Vicodin.[3] After this incident, Mr. Marcalus had additional sexual relations with [Michelle on future occasions].

8. Mr. Marcalus did not tell Sergeant Garcia that he and [Michelle] were flirting during the conversation or that she was his girlfriend. The fact that Mr. Marcalus had flirted with the woman who alleged that Mr. Berlin had raped her would probably bear no importance on the investigation. Sergeant Garcia concluded from these statements that [Marcalus's] first sexual contact with [Michelle] was the oral sex in exchange for Vicodin and that the rest of the sexual conduct occurred after the telephone conversation. Investigator Johns testified that Mr. Marcalus did not indicate whether he had sexual contact with [Michelle] before the conversation about the Vicodin and oral sex.

9. Sergeant Garcia found Mr. Marcalus to be credible and found the information to be helpful in the investigation. It

---

**3.** Sergeant Garcia testified that Mr. Marcalus stated that he gave [Michelle] one Vicodin pill [footnote in original].

was Sergeant Garcia's opinion that this information damaged the accuser's credibility. Investigator Johns considered the information to be important to the investigation because it went to the accuser's lifestyle, activities, and "believability." He also considered the fact that the accuser had exchanged sexual acts for drugs to be important to his investigation. Investigator Johns wrote a report following the investigation, which included the fact that Mr. Marcalus had received oral sex from [Michelle] in exchange for Vicodin.

10. No one brought charges against Mr. Berlin. Investigator Johns and Sergeant Garcia each prepared a report about the meeting. Sergeant Garcia prepared his report approximately 45 minutes after the January 30th meeting with Mr. Marcalus, which accurately reflected his recollection of the conversation. He gave that report to his supervisor. [Johns's report], also prepared January 30, 2008, specifically dealt with his conversation with Mr. Marcalus. On February 8, 2008, Investigator Johns provided copies of the reports about [the Officers's] conversation with Mr. Marcalus to [the AGC].

11. On March 5, 2008, [the AGC] sent Mr. Marcalus a copy of [the Officers' reports] and a letter notifying him that Bar Counsel had docketed a complaint against him and was requesting a written response. On March 12, 2008, in response to the March 5th letter, [the AGC] received a letter dated March 11, 2008 from Mr. Marcalus. Mr. Marcalus stated that [the reports] were generally accurate representations of what took place on January 30, 2008. He noted, however, that there were some inconsistencies and inaccuracies, to be addressed in his response.

12. In his response, Mr. Marcalus [admitted only] ". . . two instances of sexual contact" [with Michelle]. Mr. Marcalus addressed no other inaccuracies in the reports. Nor did he deny his statements to the Officers that he had given Denise Vicodin [and had also given Michelle] Vicodin in exchange for oral sex. Mr. Marcalus stated that he was "very happy that [he] decided to come forward with the information [he]

had about [Michelle] to the police department. [He] believe[s] that the information [he] provided to them was helpful in preventing a gross injustice from happening to [his] client."

13. During [Marcalus's] deposition prior to trial in this proceeding, he testified that he was prescribed Vicodin about five years ago for pain caused by muscle spasms in the thoracic area. Dr. [Scott] Eden and [Marcalus's brother Eric Marcalus], who is [also] a medical doctor, prescribed the medication. [Marcalus] may have also received the medication for a sprained ankle. Mr. Marcalus kept the medication and, if he ran out and had another episode, would obtain another prescription. Mr. Marcalus testified that over the last five years his brother did not tell him what was in Vicodin, but the prescription bottle bore instructions and he was informed to neither drive nor drink alcohol while using the medication.

14. Yale H. Caplan, [Ph.D.], testified in [the AGC's] case as an expert in the field of Pharmacology and Toxicology. He testified that Vicodin is the brand name for a medication that principally contains hydrocodone, a synthetic opiate analgesic also known as dihydrocodeinone that is based on morphine. In addition to this potent narcotic, Vicodin generally contains the analgesic acetaminophen, which is commonly known by the trade name Tylenol. Drugs containing hyrdrocodone mixed with acetaminophen are on Schedule [III] under the Controlled Dangerous Substances Act.

15. Dr. Caplan testified that the only legal means to obtain Vicodin is by prescription. It is frequently prescribed for mild to moderate pain. It is a drug that affects the central nervous system and the centers in the brain that control pain. If taken by someone who is not in pain, the drug can cause euphoria, drowsiness, and a general feeling of well being. The drug slows physiological processes, such as the heart rate. It is widely abused for its euphoric and generally calming effect. Vicodin is addictive.

16. Dr. Caplan further testified that Vicodin has significant side effects and should be taken only under doctor's supervi-

sion. It is a strong respiratory depressant and may cause death. Anyone taking Vicodin should be cautious operating machinery or performing complex tasks. While under the influence of Vicodin, one's coordination and reaction time are affected in a manner similar to the effects of alcohol. Vicodin should not be mixed with alcohol or any other drug that causes central nervous system depression. Additionally, the other ingredient in Vicodin, acetaminophen, may cause liver toxicity and death. When one obtains Vicodin by prescription, warnings of these adverse effects are provided.

17. The parties stipulated that there was no evidence that Mr. Marcalus provided legal services to any client that were not diligent or competent during the times relevant to the matter in question.

18. [Marcalus] offered no other evidence showing an affirmative defense or a matter of mitigation or extenuation.

Pursuant to these findings of fact, the hearing judge concluded, by clear and convincing evidence, that Marcalus had violated Rules 8.4(b) and 8.4(d) of the Maryland Rules of Professional Conduct, but that Marcalus had not violated Rule 8.4(c). The AGC recommended that this Court disbar Marcalus as a sanction for his rule violations.

## DISCUSSION

■ This Court has original jurisdiction over attorney disciplinary proceedings. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). At the hearing below, Bar Counsel has the burden of proving allegations in a disciplinary petition by clear and convincing evidence. *See* Md. Rule 16–757(b), 16–759(b)(2)(B). A hearing judge's conclusions of law are reviewed *de novo. See* Md. Rule 16–759(b)(1). Either party in a disciplinary proceeding may file exceptions to a hearing judge's findings of fact and conclusions of law. *See* Md. Rule 16–758(b). Findings of fact to which neither party takes exception may be treated as conclusively established. *See* Md. Rule 16–759(b)(2)(A).

## Exceptions

■ In this case, only Marcalus has filed exceptions to the hearing judge's findings of fact and conclusions of law. The AGC files no exceptions of its own, but argues that this Court should overrule each of Marcalus's exceptions. In evaluating these exceptions, "we accept the hearing judge's findings of fact as *prima facie* correct unless shown to be clearly erroneous." *Attorney Grievance Comm'n v. Mba–Jonas,* 402 Md. 334, 344, 936 A.2d 839, 844 (2007).

. ■ We recognize that "[w]eighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder." *Attorney Grievance Comm'n v. Robertson,* 400 Md. 618, 630, 929 A.2d 576, 583 (2007) (quotation marks and citation omitted). Correspondingly, we give "due regard to the opportunity of the hearing judge to assess the credibility of witnesses[,]" Md. Rule 16–759(b)(2)(B), and we also acknowledge that the hearing judge may "pick and choose which evidence to rely upon[,]" *Attorney Grievance Comm'n v. Harris,* 403 Md. 142, 158, 939 A.2d 732, 742 (2008) (quotation marks and citation omitted). We examine each of Marcalus's exceptions in turn.

### *Exceptions to Findings of Fact*

Marcalus takes exception to fourteen findings of fact made by the hearing judge. We have categorized the exceptions by subject matter, and address each exception below.

#### *Exceptions Relating to Framing of Pre–Hearing Facts*

In Exception Nos. 1, 2, and 3, Marcalus addresses the factual circumstances leading to the docketing of the AGC complaint against him. First, in Exception No. 1, Marcalus takes exception to the hearing judge's failure to find that Marcalus told the Officers that "Denise asked [Marcalus] for one of his Vicodin pills." We find no indication in the record as to whether Denise requested Vicodin from Marcalus, or whether Marcalus volunteered to give the Vicodin to Denise. The hearing judge found only that Sergeant Garcia recalled

Marcalus admitting that he gave the Vicodin to Denise, which Marcalus does not contest. The hearing judge may not have been persuaded, one way or the other, which person initiated the exchange, and we need not determine this ourselves. Exception No. 1 is overruled.

In Exception Nos. 2 and 3, Marcalus objects to the hearing judge's failure to find two facts: that Marcalus told the officers that "Michelle . . . asked [Marcalus] if he would give her one of his Vicodin pills[;]" and that "Michelle . . . suggested to" Marcalus that "she would give him [fellatio]." We do not find that the facts requested by Marcalus in these two exceptions materially differ from the facts found by the hearing judge. The hearing judge found that Michelle asked Marcalus for Vicodin, and that in response to Marcalus's inquiry as to "what was in it for him[,]" Michelle stated outright that she would perform fellatio. Exception Nos. 2 and 3 are therefore overruled.

*Exceptions Relating to Expert Witness Testimony*

Exception Nos. 4, 5, and 6 relate to the testimony of Dr. Yale Caplan, the AGC's expert witness. Marcalus takes exception to the hearing judge's failure to find the following: that Caplan testified that there was "no way" to know if the pills in question were Vicodin absent laboratory tests; that Caplan did not know if the pills in question were Vicodin; and that Caplan did not have any laboratory results to prove that the pills in question were Vicodin. The hearing judge was silent on all three of these issues.

With respect to the first of these exceptions, the evidence in the record does not indicate that Caplan testified that there was no way to know if the pills in question were Vicodin absent laboratory tests. When asked about the physical appearance of commercially available Vicodin pills, Caplan stated:

> [I]f the product is available, it can be identified by one of several means. It can be identified by the markings on it, you know, there [are] compendia to do that or it can be

identified by analysis, if one wants to do that, you can essentially have the chemical analysis done.

Caplan's testimony addresses non-technical ways of identifying Vicodin; this is sufficient to rebut the argument that he testified that only laboratory tests could identify the pills as Vicodin tablets. Exception No. 4 is therefore overruled.

With regard to Exception Nos. 5 and 6, Caplan was called as an expert witness on the classification and effects of Vicodin generally, and not to testify on the specific facts of this case. During the hearing, the following exchange occurred between Marcalus's counsel and Caplan:

> [COUNSEL]: Now, you have no way of knowing whether or not the substance that was at least said to have been distributed was Vicodin or not, do you?
>
> [CAPLAN]: No, not unless you have the tablet available that can be evaluated.
>
> * * *
>
> [COUNSEL]: You don't even know if [Marcalus] really had a Vicodin prescription right?
>
> [CAPLAN]: Yes, that is right.
>
> * * *
>
> [COUNSEL]: And no one has given you any information regarding the technical description of the supposed pill . . . involve[d] [in] this matter, allegedly, correct?
>
> [CAPLAN]: Yes.

It is clear that Caplan neither had personal knowledge that the pills in question were Vicodin nor any laboratory data to support that assertion. And the hearing judge made no finding otherwise. It was not necessary for the hearing judge to make a finding about what a witness did not say. Exception Nos. 5 and 6 are therefore overruled.

*Exceptions Relating to Vicodin and Marcalus's Personal Knowledge*

In Exception Nos. 7 and 9, Marcalus takes exception to the hearing judge's failure to find that Marcalus "did not know

what was in Vicodin[,]" and that Marcalus "did not know that Vicodin contained any compounds" listed on Schedule III of the Maryland Controlled Dangerous Substances Act ("MCDSA").[4] *See* Md.Code (2002), § 5–404 of the Criminal Law Article ("CL"). These exceptions do not contradict the findings of fact made by the hearing judge, who reached neither of these issues, and Marcalus does not present persuasive evidence in support of these contentions. Moreover, resolution of these exceptions would not weigh on the ultimate disposition of these proceedings, as Marcalus's knowledge of these facts is not a prerequisite for the violations of which he is accused. The exceptions are therefore overruled.

*Exceptions Relating to the Legal Status of Vicodin*

In Exception No. 8, Marcalus takes exception to the hearing judge's failure to find that Vicodin "is not listed on the schedules of controlled dangerous substances." The hearing judge found, by clear and convincing evidence, that "Vicodin is the brand name for a medication that principally contains hydrocodone, a synthetic opiate analgesic also known as dihydrocodeinone[,]" and that "[d]rugs containing hyrdrocodone mixed with acetaminophen are on Schedule [III] under the [MCDSA]."

Schedule III of the MCDSA, codified at CL Section 5–404(e)(1), reads as follows:

Substances listed in Schedule III include a material, compound, mixture, or preparation that contains limited quantities of any of these narcotic drugs or their salts:

\* \* \*

(iv) not more than 300 milligrams of dihydrocodeinone per 100 milliliters or not more than 15 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts[.]

---

4. The "Maryland Controlled Dangerous Substances Act" is the short title for Title 5 of the Criminal Law Article, addressing controlled dangerous substances, prescriptions, and other substances. *See* Md. Code (2002), § 5–1101 of the Criminal Law Article ("CL").

At the hearing below, Caplan testified that "all [Vicodin contains] some amount of Hydrocodone, the narcotic analgesic, ranging from 5 to 10 mg per tablet." Caplan further testified that all Vicodin contains either acetaminophen or another non-narcotic analgesic. This definition of Vicodin fits within the Schedule III parameters quoted above, and adequately supports the hearing judge's findings. Marcalus did not demonstrate that the hearing judge's findings were in error, and Exception No. 8 is therefore overruled.

### *Other Exceptions Relating to the Facts Below*

Marcalus takes five further exceptions to the hearing judge's findings of fact. In Exception No. 10, Marcalus takes exception to the hearing judge's failure to find that there was no clear and convincing evidence that the pill Marcalus gave to Michelle was, in fact, Vicodin. While no laboratory tests were conducted on the pill itself, there is sufficient circumstantial evidence relating to Marcalus's exchange with Michelle to sustain a finding that Vicodin actually changed hands. *Cf. In re Bennett*, 301 Md. 517, 530, 483 A.2d 1242, 1248 (1984) (holding that in a disciplinary proceeding against a district judge the "fact that the evidence [adduced] is circumstantial is no bar" to removing the judge from office.). In particular, Marcalus's admission to the Officers that he had given Michelle the Vicodin, and his admission in proceedings below that he had a prescription for Vicodin, are reliable pieces of evidence in support of the finding that the pill Marcalus gave to Michelle was actually Vicodin. Exception No. 10 is therefore overruled.

In Exception No. 11, Marcalus takes exception to the hearing judge's failure to find that Sergeant Garcia stated that "the information provided by [Marcalus] was helpful to the administration of justice." At the hearing below, the following exchange occurred between Marcalus's counsel and Sergeant Garcia:

[COUNSEL]: And the information that Mr. Marcalus provided essentially was helpful to the administration of justice, could you agree with that?

[GARCIA]: Yes.

The testimony in the record supports Marcalus's assertions. Exception No. 11 is therefore granted.

In Exception No. 12, Marcalus takes exception to the hearing judge's failure to find that "no criminal charges were brought or filed against [Marcalus] as a result of the information he provided" to the Officers. There is no indication in the record of any such charges being filed; accordingly, Exception No. 12 is granted.

In Exception No. 13, Marcalus takes exception to the hearing judge's failure to find that the AGC "did not present any independent evidence to corroborate the statements" that Marcalus made to the Officers. It is true that the AGC did not, for example, call witnesses to testify as to the accuracy of the statements Marcalus made. But, again, the hearing judge did not find to the contrary. The hearing judge was not required to make Marcalus's closing argument for him. Exception No. 13 is overruled.

In Exception No. 14, Marcalus takes exception to the hearing judge's failure to find that Marcalus "could not adequately defend the allegations in this case because of the nature of the charges and his right to assert his 5th Amendment privilege against self-incrimination." Marcalus presents no further evidence in support of this Exception, and we see absolutely no reason why the hearing judge was required to make this finding. Again, the hearing judge had no duty to make closing argument for Marcalus. Exception No. 14 is overruled.

### Exceptions to Conclusions of Law

Marcalus takes exception to the hearing judge's conclusions that he violated Rule 8.4(b) and Rule 8.4(d). We review these exceptions *de novo. See* Md. Rule 16–759(b)(1).

#### Violation of Rule 8.4(b)

Rule 8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in

other respects[.]" Violating this rule requires more than "mere" criminal conduct; an attorney "should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice." Rule 8.4(b) cmt. 2. Traditionally, illegal activity only implicates Rule 8.4(b) when it involves a crime of "moral turpitude." *See* Rule 8.4(b) cmt. 2. We have held that "moral turpitude" consists of "an act of baseness, vileness or depravity[,]" but have recognized that any analysis of a criminal act for such qualities is highly fact-specific. *See Attorney Grievance Comm'n v. Proctor,* 309 Md. 412, 419, 524 A.2d 773, 776 (1987) (quotation marks and citation omitted).

In this case, the hearing judge found that Marcalus engaged in solicitation of prostitution, prostitution, and distribution of a controlled dangerous substance. The hearing judge also found that each of these acts implicated Marcalus's fitness as an attorney.

Under CL Section 11–306(a)(1), it is illegal for an individual to "engage in prostitution or assignation by any means[.]" It also prohibits "procur[ing] or solicit[ing] . . . prostitution or assignation." CL § 11–306(a)(5). Other sections in that same subtitle define "prostitution" as "the performance of a sexual act . . . for hire[,]" CL § 11–301(c), "assignation" as "the making of an appointment or engagement for prostitution or any act in furtherance of the appointment or engagement[,]" CL § 11–301(b), and "solicit" as "urging, advising, inducing, encouraging, requesting, or commanding another[,]" CL § 11–301(f). Within this context, "sexual act" includes fellatio. *See* CL § 11–301(d) (*citing* CL § 3–301(e)). The hearing judge found, by clear and convincing evidence, that Marcalus asked Michelle "what was in it for [him]" when Michelle requested the Vicodin during a phone call to Marcalus, and acquiesced in Michelle's offer of fellatio in exchange for the Vicodin. Marcalus then engaged in sexual contact with Michelle a short time later, and completed the encounter by providing Michelle with a Vicodin tablet.

■ The Maryland Code does not define the phrase "for hire," as used in CL Section 11–301(c), nor do our precedents

elaborate on the term. In this case, however, Marcalus exchanged an item of value as a quid pro quo for Michelle's sexual act. An exchange need not be for money in order be "for hire." *See Muse v. United States,* 522 A.2d 888, 891 (D.C.1987) (holding that the exchange of a gold necklace for a sexual act constitutes prostitution under District of Columbia statute, as necklace was equivalent to "fee."). Here the telephone conversation between Marcalus and Michelle makes it clear that the oral sex was accepted in exchange for a controlled dangerous substance, which is certainly an item of value.[5]

To "hire" is to "engage the services of a person for a fee." *American Heritage Dictionary* (4th ed. 2000). As the Supreme Court of Kansas has said in a similar context,

> The statute contains words which are commonly used. It uses no legal or technical terms which would make it difficult to understand. The term[ ] "perform for hire" ... [is] easily understandable by the common person. Likewise, any citizen of common intelligence in reading the statute should be aware of what actions are criminally sanctioned....

*State v. Parker,* 236 Kan. 353, 690 P.2d 1353, 1357 (1984). Applying the plain meaning of the statutory term, making an appointment to exchange Vicodin for a sexual act constitutes an assignation. The hearing judge did not err in concluding that the encounter between Marcalus and Michelle was an assignation.[6][7]

---

**5.** While we do not know the cost of one pill of Vicodin if one buys it at a pharmacy with a prescription from a doctor, its status as a controlled dangerous substance makes it unavailable to the public and gives it a street value sufficient to constitute remuneration.

**6.** There is no indication, however, that the subsequent sexual encounters between Marcalus and Michelle involved any such exchange for value.

**7.** The evidence necessary to prove that Marcalus committed prostitution differs, however, because the crime of prostitution is focused on

■ Furthermore, the evidence is sufficient to conclude, under the clear and convincing standard, that Marcalus committed a criminal act when he gave the Vicodin pill to Michelle. Under CL Section 5–602, an unauthorized person is prohibited from distributing a controlled dangerous substance. "Distribute" means "to deliver other than by [authorized] dispensing." CL § 5–101(*l* ); *see also* CL § 5–101(k) (defining "dispense" as delivery of a substance "with the lawful order of an authorized provider."). Substances such as Vicodin, as the hearing judge noted, are listed on Schedule III of the CDSA, and Vicodin is thus a controlled dangerous substance. *See* CL § 5–404(e)(1)(iv). Marcalus distributed Vicodin without authorization, and therefore violated CL Section 5–602.

Violation of the two criminal statutes discussed above will not constitute a violation of Rule 8.4(b) unless the illegal acts reflect adversely on Marcalus's honesty, trustworthiness, or fitness as an attorney. While we have not previously addressed whether assignation in violation of CL Section 5–602 will generally satisfy this requirement, we have held that violations of the CDSA will usually involve moral turpitude. *See Proctor,* 309 Md. at 419, 524 A.2d at 776 (discussing violations of Art. 27, § 286(a)(1), the precursor to CL § 5–602). Marcalus violated CL Section 5–602 by distributing a controlled dangerous substance in an unauthorized manner, and if he were convicted in a criminal trial, he would be guilty of a felony and would face up to five years imprisonment and a fine of up to $15,000.[8] *See* CL § 5–607(a). Given the feloni-

---

the payee, not the payor. Marcalus was not paid or given any other value for engaging in fellatio. He arranged for Michelle to commit the act of prostitution, and he participated in the sexual act, but as we interpret CL Section 11–106, he did not commit the sexual act "for hire." The common sense interpretation of the term "for hire" is that one be paid for performing some action. *See Black's Law Dictionary* 799 (9th Ed. 2009) (to hire means to "engage the labor or services of another for wages or other payment"). We interpret this language to apply only to the person who receives the remuneration, and not to the person giving the remuneration.

8. A violation of CL Section 11–306, governing prostitution, is a misdemeanor, and carries with it a penalty of not more than one year's

ous nature of this crime and intentional manner in which Marcalus acted, there is no reason to deviate from the hearing judge's finding that this violation implicates Rule 8.4(b). We need not decide whether Marcalus's sexual encounter with Michelle rises to the level of "moral turpitude" necessary to reach a violation under Rule 8.4(b)—Marcalus's distribution of Vicodin is sufficient on its own. The exception is overruled.

*Corpus Delicti Rule*

Marcalus takes further exception to the hearing judge's failure to apply the corpus delicti rule to his statements to the Officers. The corpus delicti rule requires that, in a *criminal* proceeding, "an extrajudicial confession of guilt by a person accused of a crime, unsupported by other evidence, is not sufficient to warrant a conviction." *Bradbury v. State*, 233 Md. 421, 424, 197 A.2d 126, 127 (1964). The purpose of the rule is "to protect the administration of criminal justice against errors of convictions based upon untrue confessions alone." *Hadder v. State*, 238 Md. 341, 353, 209 A.2d 70, 76 (1965).

This argument has no merit. An attorney disciplinary proceeding, as the hearing judge noted, is not meant to be punitive. *See Attorney Grievance Comm'n v. Howard,* 282 Md. 515, 523–24, 385 A.2d 1191, 1196 (1978) (per curiam). It is not governed by the same standard of proof as a criminal trial, and it does not demand the same evidentiary burdens as does a criminal prosecution. *See Attorney Grievance Comm'n v. Childress*, 364 Md. 48, 55, 770 A.2d 685, 689 (2001) (holding that the "standard of proof is not heightened to proof beyond a reasonable doubt where Bar Counsel's theory of the case is that a Rule ... has been violated by conduct which constitutes a crime...."). Rather, these proceedings are governed by the rules of evidence applicable in a civil case. *See* Md. Rule 16–757(a) ("The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to

imprisonment, a fine of not more than $500, or both. *See* CL § 11–306(b).

a court trial in a civil action tried in a circuit court."). Marcalus offers no Maryland precedent suggesting that the corpus delicti rule should be applied as he requests in an attorney disciplinary proceeding. Moreover, in a civil action, Marcalus's statements to the Officers would be admissible for their truth. *See* Md. Rule 5–803(a) (allowing admission of statements of a party-opponent). Marcalus's exception is overruled.

### *Violation of Rule 8.4(d)*

Finally, Marcalus takes exception to the hearing judge's conclusion that Marcalus violated Rule 8.4(d), arguing that his conduct was not prejudicial to the administration of justice. We have held that "conduct that impacts on the image or the perception of the courts or the legal profession ... and that engenders disrespect for the courts and for the legal profession may be prejudicial to the administration of justice." *Attorney Grievance Comm'n v. Richardson*, 350 Md. 354, 368, 712 A.2d 525, 532 (1998) (citation omitted). Attorney misconduct may implicate Rule 8.4(d) even where it involves an act that does not "hinder[ ] or otherwise interfere[ ] with a judicial proceeding [in] which [the attorney] is a party or represents a party." *Id.* Only conduct that is "criminal or so egregious as to make the harm, or potential harm, flowing from it patent" will be deemed prejudicial to the administration of justice. *See Attorney Grievance Comm'n v. Link*, 380 Md. 405, 429, 844 A.2d 1197, 1211–12 (2004).

Marcalus believes his conduct did not prejudice the administration of justice because his disclosures to the Officers were "instrumental in the exoneration of his client" and "helpful to the administration of justice." Marcalus is correct that his revelations to the police were helpful to the administration of justice, and we shall consider that fact in mitigation. But the AGC complaint against Marcalus is not rooted in his disclosures. Rather, the core of the complaint is that Marcalus broke the law, specifically CL Section 5–602, by the distribution of Vicodin. The subsequent helpful disclosure of his action to the police does not eliminate the criminal act. The

act of distributing controlled dangerous substances falls within the parameters of Rule 8.4(d). *Cf. Attorney Grievance Comm'n v. Gilbert,* 356 Md. 249, 253, 739 A.2d 1, 3 (1999) (holding that drug possession adversely affects an attorney's ability to practice law, and thus "necessarily prejudices the administration of justice."). The hearing judge was correct in concluding that Marcalus violated Rule 8.4(d), and Marcalus's exception is overruled.

### Sanctions

■ The AGC has recommended a sanction of disbarment. Marcalus recommends a reprimand, in addition to an order to complete one hundred hours of pro bono service.

■ The purpose of disciplinary sanctions is "to protect the public, to protect the integrity of the legal profession and to deter other lawyers from violating the Rules of Professional Conduct...." *Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 226, 768 A.2d 607, 616 (2001). Sanctions are not designed to punish an errant attorney. *See Attorney Grievance Comm'n v. Franz & Lipowitz,* 355 Md. 752, 760, 736 A.2d 339, 343 (1999). The appropriate sanction in each case depends on the facts and circumstances of that case. *Id.* at 761, 736 A.2d at 343. These circumstances include mitigating factors, as well as an attorney's prior grievance history. *See id.* at 761, 736 A.2d at 343–44.

■ In assessing sanctions against attorneys in past cases, we have often relied upon the American Bar Association's "Standards for Imposing Lawyer Sanctions," as promulgated in the ABA's *Manual on Professional Conduct. See, e.g., Attorney Grievance Comm'n v. Taylor,* 405 Md. 697, 720, 955 A.2d 755, 768–69 (2008); *see also* 1 *ABA/BNA Lawyers' Manual On Professional Conduct* 01:838–01:839 (2009) (*"ABA Manual"*). These standards take as a starting point four foci: the nature of the ethical duty violated; the attorney's mental state; the extent of the actual or potential injury caused by the misconduct; and the existence of aggravating or mitigating circumstances. *See Taylor,* 405 Md. at 720, 955 A.2d at

769. Marcalus has committed a felony, as well as an additional misdemeanor, in violating the Rules of Professional Conduct. The record reflects that Marcalus's violations were willing and were not the result of any mental impairment on his part. All else being equal, such behavior would warrant a severe sanction. The fact that Marcalus has not been convicted of a criminal offense is no bar to the imposition of such a sanction. *See Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 394–95, 692 A.2d 465, 471 (1997) (holding that a conviction is not a necessary precursor to discipline if criminal conduct is proved by clear and convincing evidence).

Determining a sanction against Marcalus, however, also requires weighing aggravating and mitigating factors in order to give context to his actions. In past disciplinary cases, we have considered a non-exclusive list of several possible aggravating and mitigating factors, also derived from the *ABA Manual. See, e.g., Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996). These include the presence or absence of a prior disciplinary record; the absence of a dishonest or selfish motive; timely good faith efforts to make restitution or rectify consequences of misconduct; full and free disclosure to the disciplinary board or a cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental impairment; any delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and remoteness of prior offenses, if they exist. *See id. See generally* 2 *ABA Manual, supra,* at 101:3102–101:3105 (discussing the application of potential aggravating and mitigating factors).

Some of these factors weigh on our determination here, as do other qualitative considerations regarding these circumstances. In terms of aggravation, we are aware that this is not Marcalus's first sanction by the AGC. Marcalus was suspended indefinitely in 2007, with the right to apply for reinstatement after thirty days.

Yet we must look at Marcalus's crime in context. On a spectrum of controlled dangerous substance distribution offenses, Marcalus's crime is relatively minor. This lawyer possessed a legitimate prescription for Vicodin, a medicine "frequently prescribed for mild to moderate pain." [9] He gave one pill of vicodin to Michelle in return for oral sex. At some time within the past five years, he also gave Vicodin to Denise, a woman he knew. These actions violated CL Section 5–602. But they are of a fundamentally different character than if he did this regularly or he was peddling his prescription pills to the public.

▆▆ Perhaps more importantly, Marcalus's misconduct likely would never have come to light had he not volunteered the information that led to the complaint against him.[10] He did so, by all accounts, in order to help the individual who was his client until a short time before Marcalus's disclosure to the police. The evidence shows that Marcalus believed that his client had been wrongfully charged with rape by the same woman with whom he had engaged in a Vicodin-for-sex exchange. Marcalus's effort to help his client was out of the ordinary, in that he willingly placed his own self-interest in jeopardy in order to serve his client's interests. His choice to reveal those actions evinced no selfishness; to the contrary, it demonstrated a willingness to prioritize his client's interests ahead of his own. There is no indication that Marcalus profited by his statements, tangibly or intangibly. Many other attorneys in Marcalus's place may have lacked the fortitude to make this disclosure, given the potential risk to

---

**9.** *See* Stipulation No. 15.

**10.** Marcalus's voluntary disclosure of his criminal activity is significant, not least because he could not otherwise have been forced to reveal his criminal conduct, either at a criminal trial or in a professional disciplinary proceeding. *See Spevack v. Klein*, 385 U.S. 511, 514–16, 87 S.Ct. 625, 627–29, 17 L.Ed.2d 574 (1967) (plurality op.) (holding that an attorney may not be disciplined for invoking the Fifth Amendment privilege against self-incrimination in a disciplinary proceeding).

themselves. Such voluntary disclosure strongly mitigates against a harsh punishment for Marcalus's actions.[11]

## CONCLUSION

On balance, when considering Marcalus's conduct and the aggravating and mitigating factors discussed above, disbarment seems too harsh a penalty to impose. Likewise, it would be inappropriately lenient to impose a mere reprimand in the face of a committed felony. The more appropriate route is to impose a sixty day suspension from the practice of law, beginning thirty days after the date that this opinion is filed. We shall so order.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JEFFREY S. MARCALUS.**

HARRELL, BATTAGLIA and BARBERA, JJ., concur and dissent.

HARRELL, Judge, concurring and dissenting in which BATTAGLIA and BARBERA, JJ., join.

Although I concur with the Majority opinion's resolution of the exceptions to the hearing judge's findings of fact and conclusions of law, I break ranks concerning the sanction.

First, the Majority opinion avoids acknowledgment of the actual misconduct underlying Marcalus's 2007 indefinite suspension (with the right to apply for reinstatement in no sooner than 30 days) (Maj. op. at 524–25, 996 A.2d at 363–64). In

---

11. Marcalus's voluntary disclosure of his wrongdoing to a police investigator does not precisely conform with the *ABA Manual's* discussion of an attorney's "full and free disclosure" of misconduct to a disciplinary board, but the spirit of that provision can be seen in Marcalus's revelations. *See* 2 *ABA/BNA Lawyers' Manual On Professional Conduct,* 101:3104 (2009).

that matter, he violated MRPC 8.4(d) (conduct prejudicial to the administration of justice) when he sent his client inappropriate and sexually suggestive electronic text messages (sexting) and touched her in a sexually suggestive manner, all while in a courthouse awaiting a trial to commence. It would seem, given the nature of the misconduct in the present case, that Marcalus has some judgment shortcomings when it comes to acting-out as his libido moves him. When this sort of conduct becomes public, it tends to cast the image of lawyers and the legal profession in an unflattering light, to say the least. I consider the prior sanction, therefore, a more substantial aggravating factor in the analysis of the appropriate sanction in the present case than apparently does the Majority opinion.

Understandably, because we are confronted frequently in criminal law cases with various levels of bona fide drug dealers charged with distribution of controlled dangerous substances ("CDS"), the Majority opinion minimizes the relative significance of Marcalus's conduct with regard to a single Vicodin pill, although the transaction otherwise might be an inchoate drug crime as well (as well as the inchoate prostitution crime he committed). Maj. op. at 524–25, 996 A.2d at 363–64. I share that view of relativity in this context. What I do not share, however, is the Majority opinion giving significant mitigating weight to Marcalus's attributed motive in disclosing the facts of his misconduct to police, that of helping his former client and friend, Mr. Berlin, avert an assertedly false rape claim lodged by "Michelle." Maj. op. at 524–26 996 A.2d at 363–64. The hearing judge did not find this consideration to be a mitigating fact in his findings of fact and conclusions of law. To the contrary, Judge Silkworth found that, while to step forward with the information that appeared to have aided Mr. Berlin's cause was "the appropriate action to take while representing his client, it does not serve to mitigate" the alleged misconduct. Whether Marcalus rose to the aid of Mr. Berlin because he was compelled by the noblest calling of the legal profession and ethical principles or merely to help a friend, it nonetheless is possible that Marcalus, in revealing his conduct with Michelle to the police, failed to appreciate the

possible consequences to his own professional standing. I ask myself, had the record reflected that he considered those consequences before speaking to the police, would he have proceeded as he did? Because the findings of fact do not supply enough information adequately to answer that question, I am unable to agree that this consideration "*strongly mitigates*" (Maj. op. at 526, 996 A.2d at 364, notwithstanding its acknowledgment, at n. 11, that the voluntary disclosure does not fit comfortably within the ABA Lawyer's Manual's "full and free disclosure" mitigator) the sanction appropriate to this case. (Emphasis added.) Nonetheless, it is a mitigating consideration, in my view, just not one as persuasive as the Majority opinion views it.

The Majority makes no effort to triangulate, compare, or reconcile its sanction of a flat 60–day suspension with any prior case from this Court. The sanction, for all that appears from the absence of such an analysis, was plucked randomly from the air. While these facts are "unique," I think a somewhat fuller analysis leads to a different conclusion than that reached by the Majority.

I start from the premise that disbarment would be the appropriate sanction on these facts and Rule violations. Generally, in a case involving "intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like," we impose "the most severe sanction of disbarment." *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001). Such a sanction is imposed "whether [the misconduct] occur[s] in the practice of law, or otherwise." *Id.* at 414, 773 A.2d at 485. To avoid such a severe sanction, a respondent must present evidence, by a preponderance of evidence standard, of mitigation, which this Court is willing to recognize.

The *Vanderlinde* standard is applicable because Marcalus's flagship misconduct constituted a felony (Maj. op. at 520–21, 996 A.2d at 361–62) and is thus serious criminal conduct. The hearing judge found no mitigating circumstances. Nevertheless, I do not think disbarment is warranted because of the relative significance of his crimes and his lack of a truly

dishonest motive. "Although we have hewed to our statement that intentional dishonest conduct [and serious criminal conduct] ordinarily requires disbarment, we have not ignored our corresponding statement that mitigating factors can lead us to impose a less severe penalty." *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 535, 979 A.2d 146, 162 (2009). In support of that point, we considered *Attorney Grievance Comm'n v. Floyd*, 400 Md. 236, 929 A.2d 61 (2007) in *Garcia*. Floyd omitted information from an employment application in an attempt to secure a higher starting salary. *Id.* at 248, 929 A.2d at 68. We held that she violated Rule 8.4(c) by "engaging in conduct involving deceit or misrepresentation." *Id.* at 254, 929 A.2d at 71 (internal quotation marks omitted). We considered the fact that she had no prior disciplinary record and that "the instant violation is not part of a pattern of misconduct." *Id.* at 259, 929 A.2d at 74. Therefore, we imposed a 90–day suspension from the practice of law. *Id.*

In *Attorney Grievance Comm'n v. Smith*, 405 Md. 107, 115–16, 950 A.2d 101, 105–06 (2008), the respondent was convicted of impersonating a police officer and intimidating a witness in a criminal case in which Smith represented the defendant.[1] We found that his misconduct violated Rule 8.4(a)-(d). *Id.* at 110, 124, 950 A.2d at 102–03, 111. We determined, however, that there was mitigating evidence that led us to impose a lesser sanction than disbarment. Principally, we highlighted that it was his first disciplinary proceeding after 24 years of practicing law. *Id.* at 130, 950 A.2d at 114. Further, we observed that "[s]ince late 2003 to early 2004, the time of his actions, indictment, arrest and subsequent *nolle prosequi* of the charges that precipitated the case at bar, . . . Smith has had no subsequent violations. [Additionally, h]e did not seek any personal benefit by reason of his actions." *Id.* We were persuaded by that evidence that "Smith's actions will likely not be repeated and we find that he similarly poses no future

---

1. The Court of Special Appeals subsequently reversed Smith's convictions on the ground that his Sixth Amendment right to a speedy trial had been violated. 405 Md. at 111 n. 3, 950 A.2d at 103 n. 3. The State entered all charges as *nolle prosequi*. *Id.*

risk of harm to the public." *Id.* Accordingly, we imposed a sanction of a flat 6 months suspension from the practice of law. *Id.*

Here, Respondent violated the same Rule as Smith, but his sanction is shorter. Marcalus, admitted to the Maryland Bar in 1993, has one prior disciplinary proceeding before this Court during a career of shorter duration than that of Smith. Furthermore, unlike Smith, he clearly sought a personal benefit from his actions, evinced by his response of "what was in it for [him]" when "Michelle" requested a Vicodin pill from him. Maj. op. at 518, 996 A.2d at 360 (alteration in original). Finally, judging from the conduct at issue in the present disciplinary proceeding and his inappropriate conduct in the prior disciplinary proceeding, it cannot be stated with any degree of confidence that Marcalus will not repeat these types of libido-driven actions and that, unlike Smith, he may pose a future risk of harm to the public, unless we persuade him to be more circumspect by means of a more appropriate sanction than the Majority opinion advances, with the prospect of worse to come should we encounter him again on similar or analogous ground.

Similarly, unlike Floyd, Marcalus's violations demonstrate a pattern of misconduct. Additionally, unlike Floyd, this Court has disciplined Marcalus before. Yet, the Majority opinion imposes a lesser sanction upon Marcalus than we did upon Floyd.

Considering Marcalus's disciplinary track-record, his solicitation of a personal benefit in this case, and the potential for future harm to the public, I find more aggravating factors than mitigating factors in the present case than were present in *Smith* and *Floyd.* As such, I believe that a stronger sanction should be imposed than the Majority does. Accordingly, I would suspend indefinitely Marcalus, with the right to reapply for reinstatement in no sooner than 6 months.

Judges BATTAGLIA and BARBERA authorize me to state that they join the views expressed in this opinion.